UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JOHN RAY and SUSAN RAY, | ) ) ) |
| Petitioners | ) ) |
| v. | ) Case No. 1:16-cv-00428 (CKK) ) |
| MARC CHAFETZ, | ) ) |
| Respondent | ) ) |

**MR. CHAFETZ MOTION FOR RULE 11 SANCTIONS AGAINST DWIGHT MURRAY**

August 11, 2016                                         Respectfully submitted,

/s/
Timothy R. Clinton (D.C. Bar no. 497901)
**CLINTON BROOK & PEED**
1455 Pennsylvania Ave. N.W., Suite 400
Washington, DC 20004
(202) 621-1828 (tel)
(202) 204-6320 (fax)

*Counsel for Marc Chafetz*

**TABLE OF CONTENTS**

BRIEF SUMMARY ................................................................................................... 1

LEGAL STANDARD ................................................................................................. 1

ARGUMENT .............................................................................................................. 3

    I.    The Arbitrator Unequivocally Denied Mr. Chafetz's Request for Sanctions ....... 4

    II.    Denying that the Arbitrator Ruled that "John Ray is not entitled to any recovery from Beltway" Is Unwarranted ............................................................................... 8

    III.    Denying that the Arbitrator Awarded $43,850 Against Susan Ray and $80,248.48 Against John and Susan Ray Is Unwarranted ................................... 9

    IV.    Accusations of Professional Misconduct and Complaints About Post-Award Actions Were Made for "Improper Purpose" ....................................................... 9

        A.    Accusations of Post-Award Misconduct ........................................................ 10

        B.    Representation in Bankruptcy Proceedings ................................................... 12

    V.    Frivolous Arguments, False Accusations, False Allegations, and Unwarranted Denials, Are the Hallmark of Mr. Murray's Filings .......................................... 14

CONCLUSION ......................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Utley*, 129 F.R.D. 1 (D.D.C. 1990).................................................................................. 2

*Braden v. News World Comm'ns, Inc.*, 1993 WL 625508 (D.C. Super. Ct. Sept. 3, 1993)............ 3

*Cunningham v. Bathon*, 719 A.2d 497 (D.C. 1998)................................................................... 1, 3

*Delaware & H. Ry. Co. v. United Transp. Union*, 450 F.2d 603 (D.C. Cir. 1971)...................... 13

*Duncan v. WJLA-TV*, 106 F.R.D. 4 (D.D.C. 1984) ...................................................................... 2

*Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362 (D.C. 2007) ......................................................................................................................................... 3

*Hall Street Associates, LLC v. Mattel, Inc.*, 552 U.S. 576 (2008) ............................................... 10

*In re Beltway Law Group LLP*, Case No. 14-333 (D.D.C. Bankr. filed Jun. 3, 2014)................. 13

*In re Beltway Law Group, LLP*, Case No. 14-380 (D.D.C. Bankr. filed Jul. 3, 2014)................. 14

*In re Haar*, 667 A.2d 1350 (D.C. 1995)...................................................................................... 13

*Office & Prof'l Employees Int'l Union v. Int'l Bhd. of Painters*, 580 A.2d 630 (D.C. 1990)......... 2

*Peddlers Square, Inc. v. Scheuermann*, 766 A.2d 551 (D.C. 2001)............................................... 3

*Robinson v. Nat'l Cash Register Co.*, 808 F.2d 1119 (5th Cir.1987)......................................... 2, 3

**Other Authorities**

D.C. Legal Ethics Opinion 293..................................................................................................... 13

Fed. R. Civ. P. 11, Advisory Committee Note, 97 F.R.D. 165 (1983) ....................................... 2, 3

**Rules**

D.C. Rules of Professional Conduct, Rule 1.15............................................................................ 10

D.C. Rules of Professional Conduct, Rule 1.7.............................................................................. 10

D.C. Rules of Professional Conduct, Rule 3.3................................................................... 8, 9, 10

Fed. R. Civ. P. 11................................................................................................................ passim

Marc Chafetz, by and through undersigned counsel, hereby submits this Motion for Rule 11 Sanctions Against Dwight Murray, stating as follows:

## BRIEF SUMMARY

Nearly everything that Mr. Murray has filed in this case includes something that violates Rule 11, oftentimes repeating knowingly false claims even after they had been thoroughly refuted without even acknowledging—let alone explaining—the overwhelming and uncontroverted evidence putting the lie to his statements. Mr. Chafetz has done all he could to avoid burdening the Court with yet another motion, and accordingly, has patiently endured Mr. Murray's shenanigans for months without response. But enough is enough.

## LEGAL STANDARD

Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). Under Rule 11, sanctions are mandatory once it has been determined that a Rule 11 violation has occurred. *Cunningham v. Bathon*, 719 A.2d 497, 502 (D.C. 1998) ("Once a trial court determines that a party has violated Rule 11, 'sanctions of some sort [must] be imposed.'") (citation omitted). *See also* Fed. R. Civ. P. 11, Advisory Committee Note, 97 F.R.D. 165, 199-200 (1983) (hereafter "***Advisory Committee Note***") ("The text of the amended rule seeks to dispel apprehensions

1

that efforts to obtain enforcement will be fruitless by insuring that the rule will be applied when properly invoked.").

Attorneys may not avoid sanctions by claiming "that [they] acted in good faith, or that [they] personally [were] unaware of the groundless nature of an argument or claim." *Allen v. Utley,* 129 F.R.D. 1, 3 (D.D.C. 1990). Rule 11 "explicitly and unambiguously imposes an *affirmative duty* on each attorney *to conduct a reasonable inquiry* into the viability of a pleading before it is signed." *Id.* (emphasis and ellipsis in original; citations omitted); *accord, Robinson v. Nat'l Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir.1987).

The reasonableness of a pre-filing inquiry is determined on a case-by-case basis. *See, e.g., Office & Prof'l Employees Int'l Union v. Int'l Bhd. of Painters,* 580 A.2d 630, 635 (D.C. 1990) (duty of reasonable inquiry not satisfied by mere suspicions); *Duncan v. WJLA-TV,* 106 F.R.D. 4, 6 (D.D.C. 1984) (reasonable inquiry requires counsel to "stop and think" before signing pleading). Factors affecting the reasonableness determination include:

> how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Advisory Committee Note, 97 F.R.D. at 199. The relative experience of the attorneys also weighs heavily in the analysis; inappropriate conduct by experienced counsel is deemed to be more worthy of sanction than that of less experienced counsel. *See Cunningham*, 719 A.2d at 500 (imposing sanctions where plaintiff, an "experienced attorney," "could proffer no solid factual [supporting] allegations"); *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered*, 935 A.2d 362, 376 (D.C. 2007) ("The trial judge considered "the professional conduct of [the two attorneys] to be well beyond the pale. These two experienced lawyers knew, or had to know, they did not have sufficient evidence to make a case.").

Rule 11's inquiry requirement includes "a continuing obligation to review and reevaluate their position as the case develops"; it is not a "'one time only obligation.'" *Braden v. News World Comm'ns, Inc.*, 1993 WL 625508, *2 (D.C. Super. Ct. Sept. 3, 1993) (quoting *Robinson v. Nat'l Cash Register Co.,* 808 F.2d 1119, 1127 (5th Cir.1987)). "*Each filing* must reflect the results of reasonable inquiry." *Id.* (emphasis added). In light of this continuing obligation, the sanctionable nature of an attorney's conduct is "aggravated by its persistence." *Peddlers Square, Inc. v. Scheuermann*, 766 A.2d 551, 557-58 (D.C. 2001) (imposing sanctions for repeated factual allegations that "were downright false, as plaintiffs plainly knew or should have known").

## **ARGUMENT**

Mr. Murray is no newcomer to the law, nor is he short on competence. According to his website:

> [Mr. Murray] is a veteran of over 100 jury trials covering a broad range of areas. He has tried cases in the District of Columbia, Maryland, Delaware, Arkansas, and West Virginia. Mr. Murray is a Fellow of the American College of Trial Lawyers and a Fellow with the American Bar Foundation. He retired from Jordan Coyne & Savits, LLP in 2012 where he was a partner for more than 30 years.
>
> Mr. Murray's experience before the federal and local courts has led to his selection as a member of the local and federal judicial conferences, Civil Justice Reform Act Advisory Group for the United States District Court for the District of Columbia, Pro Se Litigation Committee of the United States District Court and participated as a panelist on the subject of Jury Reform. He has also served on the United States District Court's Committee on Grievances and as a Trustee on the D.C. Bar's Client Security Fund. Mr. Murray is the first African American to be elected president of the Bar Association of the District of Columbia.
>
> Mr. Murray has taught Trial Tactics at the Catholic University Columbus School of Law and has lectured on trial tactics for the D.C. Bar and the Georgetown University School of Law Continual Legal Education Program. He also served as a Teaching Team Member of the Harvard Law School's Winter Trial Advocacy

> Workshop from 2000-2009. The Trial Advocacy Workshop teaches techniques of fact presentation at trial.

Dwight Murray, Of Counsel, http://www.steinmitchell.com/lawyers-Dwight-Murray.html. Given his experience and accomplishments, the misconduct described below must have been intentional and calculated. This makes his conduct particularly egregious and appropriate for sanction.

**I.      The Arbitrator Unequivocally Denied Mr. Chafetz's Request for Sanctions**

In the Rays' most recent filing, their Opposition to Mr. Chafetz's Cross-Motion (Dkt#24) ("Cross-Motion Opp."), Mr. Murray repeated misrepresentations regarding sanctions that he has made extensively throughout these proceedings: (i) that Mr. Chafetz "sought . . . sanctions against BLG," *id.* at 7, 8; and (ii) that the Arbitrator awarded "sanctions," including against Beltway. Cross-Motion Opp., 5, 7, 8, 11, 13. Both statement is false, and Mr. Murray knows it.

Mr. Chafetz never sought sanctions against Beltway. On April 4, 2014, Mr. Chafetz filed a motion in the Arbitration seeking two things: (i) a declaration that he is a "prevailing party" entitled to fee-shifting under the Amended Partnership Agreement, Ex. 1, 4-13; and (ii) an award of sanctions against the Susan Ray and her attorneys. *Id.* at 13 ("Claimant's attorneys and their law firms should be . . . liable for all attorney's fees, costs, and expenses"); *id.* at 53 ("the Arbitrator should order Claimant, her attorneys, and their respective law firms, to be jointly liable to Respondent for all attorney's fees, costs, and expenses"). Nothing in this could reasonably be construed as seeking sanctions against *Beltway*. Nevertheless, Mr. Murray has—more than once— alleged that Mr. Chafetz sought sanctions against Beltway. *See*, *e.g.*, Reply re Renewed Pet'n (Dkt#13), 6 (Chafetz "pursued a motion for sanctions against Petitioners and BLG").

As for what the Arbitrator awarded, he unequivocally denied Mr. Chafetz's request for sanctions (which did not even seek against Beltway):

> The Arbitrator, having thoughtfully considered the application for sanctions by Mr. Clinton on behalf of Marc Chafetz, has determined that although the actions of Mr.

4

> Carleton [sic] and Ms. Simon and the firm of Vorys, Sater, Seymour and Pease, LLP, appear to have been divisive, less than constructive and bordered upon the precipice of professionalism, they do not warrant monetary sanctions and none will be awarded. The Arbitrator has considered the motion for sanctions against Susan Ray, who is not an attorney, and although Ms. Ray's participation created difficulties for the prior arbitrators and myself in adjudicating the claims, no sanctions will be awarded against her. . . .
>
> With respect to outstanding costs of the arbitration and attorney's fees sought by Mr. Clinton on behalf of Mr. Chafetz, the costs of the arbitration . . . [and] Attorneys fees . . . are awarded in favor of Mr. Chafetz against Susan Ray and John Ray . . . jointly and severally. . . . Both the Amended Partnership Agreement, Section 12-13 and the AAA Rules support this decision.

*See* Cross-Motion Ex. 3 (Dkt#23-4), 2-3.

The allegation that the Arbitrator awarded "sanctions" against anyone, let alone against Beltway, is just plain false. The falsity of this allegation has not stopped Mr. Murray from repeating it *ad nauseum* as both a reason to vacate the Arbitration Award and to sanction undersigned counsel.

In the original Petition, Mr. Murray claimed (falsely) that "the award should be vacated because it exceeded Arbitrator Margulies' authority. The record is clear that the sanction award was premised on Rule 11 of the Federal Rules of Civil Procedure, which do not apply, and the award was issued in contravention of and outside the scope of the arbitration clause contained in the LLP Agreement." Pet'n (Dkt#1-1), 18. Mr. Murray made this false representation even though his filing *attached the award* expressly denying sanctions. *See* Pet'n Ex. 1 (Dkt#1-2), 2-3.

After the Petition, both Mr. Chafetz and the Arbitrator corrected Mr. Murray's misrepresentation. In Opposition, Mr. Chafetz explained:

> Mr. Ray devotes the final three pages of his brief to the proposition that "the award of sanctions should be vacated as a violation of [9 U.S.C.] § 10(a)(4)." Pet'n, 18. But Mr. Chafetz did not seek an attorneys' fee sanction against Mr. Ray, Ex. A, ¶ 8, and the Arbitrator's order expressly denied the sanctions requested against Mrs. Ray and her attorneys. Ex. 1 (Dkt#1-2), 2 (finding that the conduct of Mrs. Ray's former attorneys "do not warrant monetary sanctions and none will be awarded"); *id*. (holding that "no sanctions will be awarded against" Mrs. Ray). The Court cannot vacate an award that does not exist. To the extent the Arbitrator generally ruled that attorneys' fees and costs will be awarded, the Arbitrator explained that

5

> his award was supported by Section 12.13 of the Amended Partnership Agreement, which provides mandatory fee shifting to "[t]he losing party," as well as the AAA Rules. Ex. 1 (Dkt#1-2), 3 (Order); Ex. 2 (Dkt#1-3), § 12.13 (Amended P'ship Agmt); Ex. H, AAA Rule R-47 (authorizing the award of attorneys' fees and costs).

Opp. to Pet'n (Dkt#5) (Mar. 24, 2016), 8 & n.4. When the Arbitrator awarded a specific amount of attorneys' fees and costs, he explained that they "are available through [the fee-shifting provisions of] §12.13 of the Partnership Agreement and AAA Rule R-47, which the Arbitrator finds is clearly appropriate since Mr. Chafetz prevailed in the proceeding." Cross-Motion Ex. 4 (Dkt#5), 3 (May 12, 2016). Contractual fee-shifting is not a "sanction."

On May 26, in Support of the Rays' Renewed Petition, Mr. Murray continued to insist that "the arbitrator had no trouble issuing sanctions against an unrepresented entity for conduct that was unspecified and in which BLG never participated." Memo in Support of Renewed Pet'n, 2 (Dkt#9-1). And he repeated it again. *Id.* at 12 ("First, § 12.13 [of the Amended Partnership Agreement] does not provide for an award of fees and costs as sanctions."). And again. *Id.* at 13 ("Another illustration of the arbitrator's manifest disregard for the law is his violation of AAA Rule 58 dealing with sanctions."). And again. *Id.* at 14 ("[A]ny award of sanctions by Mr. Margulies did not comply with Rule 58(a).").

This time, undersigned counsel challenged the factual misrepresentations about sanctions again, but again abstained from seeking Rule 11 sanctions. *See* Opp. to Renewed Pet'n (Dkt#12), 5 n.5 ("[T]he arbitrator denied Mr. Chafetz's request for sanctions against the Rays' counsel notwithstanding overwhelming evidence. While the Arbitrator's tolerance of the Rays' unrelenting misbehavior reflects poorly on the forum, it does not reflect bias *against* the Rays."); *id.* at 11 n.8 ("The Rays also doggedly insist that the Arbitrator awarded sanctions, even though the Arbitrator *declined* to impose sanctions.") (citations omitted) (emphasis in original).

In their very next filing, Mr. Murray stuck to his guns. Reply re Renewed Pet'n (Dkt#13), 2 (alleging the Final Award "award[ed] specific sanctions to Respondent not only against [the Rays], but BLG as well."). And repeated the lie again. *Id.* at 6 ("Mr. Margulies' Final Award granted an award of sanctions not only against Susan Ray and John Ray, but also BLG."). And again. *Id.* at 10 (Chafetz "had sanctions awarded against BLG in a Final Award"). And yet again. *Id.* at 12 ("the award of sanctions against BLG"). And again. *Id.* at 15 ("Mr. Margulies should have known that the imposition of attorneys' fees and costs as sanctions was a serious matter."). And *again*. *Id.* ("Arbitrator Margulies issued an initial order awarding fees and costs as sanctions").

Mr. Chafetz corrected Mr. Murray for the *third* time in his Surreply (which has not yet been accepted for filing), and yet again abstained from seeking sanctions. Surreply re Renewed Pet'n (Dkt#14-1), 1 & n.1 ("the Arbitrator expressly *declined* to impose sanctions and expressly based his award on the fee-shifting provisions of the Amended Partnership Agreement") (citing awards). *See also id.* at 4 ("[N]o amount of repetition will change the fact that the arbitrator expressly *denied* sanctions and awarded fees and costs pursuant to the fee-shifting provisions of the Amended Partnership Agreement.").

That still did not deter Mr. Murray. In his Opposition to the Motion for Leave to File a Surreply, Mr. Murray repeated the false sanctions allegation again. Dkt#22, 4 ("Respondent's contention also ignores the improper Final Order issued by Arbitrator Margulies which awarded sanctions against BLG . . . . To this day, neither Mr. Margulies nor Respondent made any effort to describe the conduct committed by BLG that would support an award for sanction[s]."). And again. *Id.* at 5 ("an award of sanctions against unrepresented BLG"). And *again*. *Id.* at 6 ("Final Award awarding sanctions").

7

The Opposition to the Cross-Motion—the filing at issue here—is the *fifth* filing in which Mr. Murray repeated this undeniably false allegation, and he did so after Mr. Chafetz (and the Arbitrator) corrected him at least *three* times. Such persistence is unforgivable.

**II.     Denying that the Arbitrator Ruled that "John Ray is not entitled to any recovery from Beltway" Is Unwarranted**

In the Rays' Opposition to Mr. Chafetz's Cross-Motion (Dkt#24), Mr. Murray argued that the statement in the Cross-Motion (Dkt#23) that the Arbitrator ruled that "John Ray is not entitled to any recovery from Beltway," was "not only false, but . . . intentionally misrepresents the Final Award . . . in violation of Rule 3.3(a)(1) of the Rules of Professional Conduct." Opp. to Cross-Motion, 4 (referencing without citing Cross-Motion, 1). Denying the statement violates Rule 11(b)(4); asserting that it was an "intentional[] misrepresent[ation]" in violation of undersigned's ethical duties violates each of the other prongs of Rule 11(b).

In the Interim Award of September 25, 2015, the Arbitrator granted "the Chafetz Partial Summary Judgment Motion in part" against John Ray "based on Breach of Contract." Cross-Motion Ex. 2 (Dkt#23-3), 3. The breach of contract claim requested that the Arbitrator "find that Mr. Ray cannot recover anything under the Distribution Agreement, and thus lacks any enforceable claims with regard to Beltway." Cross-Motion Reply Ex. 6 (Dkt#25-1), 27. Later, in the Interim Award of February 24, 2016, the Arbitrator explained that his "Ruling of September 24, 2015 on breach of contract moots the issue [of] . . . a declaratory judgment claim against Mr. Ray . . . ***because Mr. Ray's recovery was foreclosed thereby***." Cross-Motion Ex. 3 (Dkt#23-4), 3 (emphasis added).[1]

---

[1] In the Final Award, "[t]he Arbitrator specifically incorporate[d] prior Orders and/or Awards entered into in this matter and with th[at] award finalize[d] all issues otherwise extant." Cross-Motion Ex. 4 (Dkt#23-5), 4.

8

It is one thing to challenge the enforceability of such an award, and it is quite another to simply lie about its existence.

### III. Denying that the Arbitrator Awarded $43,850 Against Susan Ray and $80,248.48 Against John and Susan Ray Is Unwarranted

In the Opposition to the Cross-Motion, Mr. Murray asserts that "there was nothing in the Final Award to support [Mr. Chafetz's] contention that he was awarded $43,850.00 against Susan Ray and $80,248.48 jointly and severally against John and Susan Ray." Opp. to Cross-Motion (Dkt#24), 4-5. This statement was, according to Mr. Murray, "a complete fabrication" and "another intentional violation of Rule 3.3(a)." *Id.* at 5. This is yet another outright lie by Mr. Murray. Here is the text of the Interim Award of September 25, 2015:

> [T]he award in the amount of $80,248.48 is granted in favor of Marc Chafetz and against Beltway Law Group, LLP and Susan and John Ray, said sum to be assessed against the interests of Susan and John Ray in said entity first to the extent of their interest, if any; and the claim in the amount of $43,850.00 is granted in favor of Marc Chafetz and against Susan Ray and Beltway Law Group, LLP, said sum to be assessed against the Interest of Susan Ray to the extent of her interest in said entity.

Ex. 2, 3. The award was specifically incorporated into the Final Award. Ex. 4, 4.[2] How Mr. Murray could possibly defend this denial is beyond comprehension.

### IV. Accusations of Professional Misconduct and Complaints About Post-Award Actions Were Made for "Improper Purpose"

Even though Section 10(a) of the Federal Arbitration Act "provide[s] the FAA's exclusive grounds for expedited vacatur," *Hall Street Associates, LLC v. Mattel, Inc.,* 552 U.S. 576, 582 (2008), hardly anything in Mr. Murray's Opposition to the Cross-Motion to Confirm was

---

[2] Mr. Murray insists that it is problematic for the Arbitrator to word his awards as being "against Beltway," as if Mr. Chafetz were somehow adverse to Beltway. Opp. to Cross-Motion, 5, 7. This concern is misplaced. The Arbitrator simply ruled that the award against the Rays could be executed first against their *interest* in Beltway, i.e., that Susan Ray's share in Beltway's assets could be distributed to Mr. Chafetz as part of the winding up process to satisfy the award.

9

addressed to those factors. To the contrary, most of the Opposition contains false and scandalous accusations of unethical conduct by undersigned counsel that have nothing at all to do with the Cross-Motion that it was opposing. *See*, *e.g.*, Opp., 2-3 (accusing undersigned of violating Rule 1.15 of the Rules of Professional Conduct); *id*. at 4 (Rule 3.3(a)(1)); *id*. at 5 (same); *id*. at 6 ("Respondent's [sic] descent into ethical misconduct by the disobedience of Judge Levie's Order"); *id.* at 7 (Rule 1.7(a)); *id.* at 11 (Rule 1.7(a) and Rule 1.15). Being utterly irrelevant to the matter *sub judice*, as an experienced and accomplished attorney like Mr. Murray must know, could only have been made for *"*improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

But irrelevance is not their only problem. The accusations are also blatantly false.

### A.   Accusations of Post-Award Misconduct

Using particularly colorful language ("immoral," "illegal," and "Machiavellian"), Mr. Murray repeatedly accuses undersigned counsel of egregious ethical misconduct for following the Arbitrator's orders. Opp. to Cross-Motion, 1-2. *See also id.* at 6, 7 (claiming that distributions pursuant to the Final Award breached various fiduciary duties of Mr. Chafetz and his counsel). Again, post-Final Award conduct by a party can form no basis for vacating a Final Award itself, and Mr. Murray has made no argument that it does. But these allegations are so scandalous—and so baseless—that they absolutely must be sanctioned.

As Mr. Murray now admits, Judge Levie's order regarding the escrow account expressly provided that disbursements be made pursuant to "an order of the Arbitrator." Opp., 7.[3] That is

---

[3] This admission by Mr. Murray, while welcome, is a recent development. Previously, Mr. Murray brazenly asserted falsely that Judge Levie "ordered no distributions from BLG's escrow account [be made] without the expressed [sic] authorization of Susan Ray." Reply re Renewed Pet'n (Dkt#13), 8 (citing Arbitration Order of Mar. 31, 2014). *Cf.* Pet'n Ex. 11 (Dkt#1-12), 6 ("no

10

precisely what Mr. Chafetz and undersigned counsel did after the Arbitrator awarded "$80,248.48 . . . said sum *to be assessed* against the interests of Susan and John Ray in [Beltway]" and "$43,850.00 . . . said sum *to be assessed* against the interests of Susan Ray first to the extent of her interest in [Beltway]," Cross-Motion Ex. 2 (Dkt#23-3), and later "awarded [Mr. Chafetz] $506,050.18, *to be paid or reimbursed*, such as the case may be, against Beltway Law Group, Susan Ray and John Ray," Cross-Motion Ex. 4 (Dkt#23-5), 3 (emphasis added).

There is no basis for the Rays to complain about distributions made pursuant to these orders. Beltway is *dissolved* and winding up its affairs. Pet'n Ex. 11 (Dkt#1-12), 6 (ordering Beltway dissolved). It has no debts to third parties, and no debts to partners. All that is left is for Beltway to distribute its assets to its partners, Marc Chafetz and Susan Ray. As the statements submitted by the Rays shows, Mrs. Ray was credited her fair share, and pursuant to the Arbitrator's orders, the Arbitrator's awards to Mr. Chafetz were "assessed" against her interests. *See*, *e.g.*, Rays' Reply re Renewed Pet'n Ex. 2 (Dkt#13-2) (trust report showing distributions); *id.* Ex. 3 (Dkt#12-3) (same).

While the actions of Chafetz and his counsel clearly complied with the Arbitrator's order, Mr. Murray claims that this distribution "was illegal" and in violation of D.C. Rules of Professional Conduct 1.15(c) because Mrs. Ray "disputes" Mr. Chafetz's right to the funds. Opp. to Cross-Motion (Dkt#24), 2-3. What Mr. Chafetz (and undersigned counsel) were supposed to do, according to Mr. Murray, is: "The disputed portion of funds should be kept in trust and the lawyer should suggest means for prompt resolution of the dispute, *such as arbitration*." *Id.* at 3 (quoting D.C. Rules of Professional Conduct, Rule 1.15(c), cmt [7]) (emphasis added). After two and a half

---

disbursements from the Escrow Account without *either* express written consent of Claimant Ray . . . *or* an order of the Arbitrator") (Arbitration Order of Mar. 31, 2014) (emphasis added).

11

years resolving the Rays' utterly frivolous "dispute" in a contentious arbitration, it takes true chutzpah to say that it is unethical to act pursuant to the arbitrator's award because . . . the same dispute needs to be arbitrated *again*.

Mr. Murray might respond that the pendency of his clients' petition to vacate the arbitration award means that the dispute has not yet been resolved. But that is not true. The law is clear that "the results of [an] Arbitration Award remain in effect until changed by contract or in accordance with statutory procedures." *Delaware & H. Ry. Co. v. United Transp. Union*, 450 F.2d 603, 636 (D.C. Cir. 1971). If the Court vacates the Arbitration Award (or any portion of it), the ultimate resolution of the Arbitration could, theoretically, result in liability to Mr. Chafetz. But in the meantime, the Rays' sour grapes at losing the Arbitration simply afford no basis to make such outrageous accusations against Mr. Chafetz and his counsel.[4]

### B. Representation in Bankruptcy Proceedings

Mr. Murray argues that it was "ethical misconduct" for undersigned counsel to represent Beltway in connection with the involuntary bankruptcy proceedings John Ray filed, *In re Beltway Law Group LLP*, Case No. 14-333 (D.D.C. Bankr. filed Jun. 3, 2014). Opp. to Cross-Motion, 5-6

---

[4] According to D.C. Legal Ethics Opinion 293, there is a difference between disputes between a lawyer and his client, and between a lawyer and a third party. A client's dispute need not be "genuine, serious, or bona fide." LEO 293 (quoting *In re Haar*, 667 A.2d 1350, 1353 (D.C. 1995)). Neither of the Rays are, or have ever been, clients of undersigned counsel, so this rule is inapplicable. As for third parties such as the Rays, the rules provide that "the mere assertion of a claim by a third party is not enough by itself to freeze property in the lawyer's possession until the dispute is resolved." *Id.* Such persons must have a "just claim," such as an attachment or garnishment, a statutory lien, a "court order relating to the specific funds in the lawyer's possession," or "a contractual agreement made by the client and joined in or ratified by the lawyer to pay certain funds in the possession of the lawyer . . . to a third party." *Id.* None of these apply. If the Rays wanted to prevent Mr. Chafetz from acting pursuant to the Arbitration Award, they could have sought a temporary restraining order and preliminary injunction, but they did not do so. (Probably because the "likelihood of success" is closer to "snowball's chance in Washington summer" than "substantial.")

(also citing exhibits relating to undersigned's representation in the involuntary bankruptcy proceedings that Susan Ray filed the day after John Ray dismissed his action, *In re Beltway Law Group, LLP*, Case No. 14-380 (D.D.C. Bankr. filed Jul. 3, 2014)). According to Mr. Murray, Judge Levie prohibited undersigned from representing Beltway in Interim Order #2, that the order "was never modified and continued in its effect," Opp., 5, and that undersigned's representation of Beltway in the bankruptcy proceedings violated that order. *Id.* at 6.

Everything about this is false. The Arbitrator expressly overruled Interim Order #2 in the March 31 Interim Award, which was later converted into the Partial Final Award of June 9, 2014. *See* Reply re Cross-Motion Ex. 7 (Dkt#25-2), 5 ("[Mr. Chafetz's] counsel is in the best position to represent BLG"). Indeed, in Interim Order #10 (Aug. 29, 2014), the Arbitrator expressly rejected the precise claim that the Rays raise in their Opposition, reaffirming his June 26, 2014 email explaining that "Judge Teel is more than able to make the determination as to the proper representative of BLG in the [bankruptcy] matter before him." Reply re Cross-Motion Ex. 8 (Dkt#25-3), 2. For his part, Judge Teel *also* squarely rejected the Rays' accusation:

> [Susan] Ray claims in her briefs that the attorney who entered an appearance for Beltway, Timothy R. Clinton, is not actually counsel for Beltway because he was not authorized by Beltway to represent it, and therefor Clinton's fees cannot be awarded as "in favor of the debtor" as contemplated by [11 U.S.C.] § 303(b)(3). I reject Ray's contention. . . .
>
> [Mrs.] Ray's argument rests mainly on . . . [the argument that] in th[e] arbitration, the arbitrator did not authorize Clinton to represent Beltway in this bankruptcy case. As Beltway points out, however, the arbitrator did not bar Clinton from representing Beltway; rather, he declined to rule on the issue . . . . It is noteworthy that the arbitrator did authorize Clinton, as retained by Chafetz, to represent Beltway in the two pending North Carolina state court actions.

Reply re Cross-Motion Ex. 9 (Dkt#25-4), 2-3. "For all these reasons, [Judge Teel] reject[ed] Ray's contention that Clinton does not represent Beltway for purposes of this bankruptcy case." *Id.* at 6

13

(citing the Amended Partnership Agreement and various statutory provisions) (ordering Mrs. Ray to pay undersign counsel's fees).

As with the misrepresentations about sanctions, this is another canard that Mr. Murray (and the Rays' previous counsel) have repeated several times. Judge Levie and Judge Teel expressly corrected the misrepresentation, but that did not stop Mr. Murray from repeating again it in the Petition. *See* Pet'n (Dkt#1-1), 7 (The December 31, 2013 "order denied Mr. Chafetz's counsel's request to represent BLG . . . . Nevertheless, there were occasions where counsel for Mr. Chafetz violated this order without any consequence."). The persistent repetition of the false accusation in the Opposition to the Cross-Motion makes it all the more egregious.

### V.     Frivolous Arguments, False Accusations, False Allegations, and Unwarranted Denials, Are the Hallmark of Mr. Murray's Filings

The improper conduct in the Opposition to the Cross-Motion are merely the tip of the iceberg. The record is replete with examples of similar misconduct. *See*, *e.g.*, Opp. to Renewed Pet'n (Dkt#12), 11-13 (describing Mr. Murray's "astonishing lie" that the Rays "were not provided an opportunity to contest the reasonableness of [Mr. Chafetz's] claims for attorneys' fees."); Surreply re Renewed Pet'n (Dkt#14-1), 5-7 (describing several "false allegations" by Mr. Murray). The misconduct above is no accident. If there is any unifying factor to Mr. Murray's various filings, it is a consistent pattern of misconduct. Absent substantial sanctions, the Court should expect it to continue indefinitely.

### CONCLUSION

Mr. Chafetz has been very patient and forgiving of Mr. Murray's misconduct. He could easily have filed at least three other Rule 11 motions in this matter. The most recent filing conclusively establishes that, absent the imposition of particularly harsh sanctions, such misconduct will likely continue unabated until the close of the case. Accordingly, we respectfully

request an award of attorneys' fees associated with the Reply to the Cross-Motion and this Motion, as well as a substantial penalty into court.

August 11, 2016                               Respectfully submitted,

                                              /s/
                                              Timothy R. Clinton (D.C. Bar no. 497901)
                                              **CLINTON BROOK & PEED**
                                              1455 Pennsylvania Ave. N.W., Suite 400
                                              Washington, DC 20004
                                              (202) 621-1828 (tel)
                                              (202) 204-6320 (fax)

                                              *Attorney for Marc Chafetz*

## CERTIFICATE OF COMPLIANCE

I hereby certify that a draft of this Motion was served on Mr. Murray at 1:10am on July 22, 2016. On August 11, 2016, Mr. Murray wrote that he believes the Motion "lacks merit" and refused to withdraw the offending statements absent some form of compensation to his client's advantage. That offer was refused.

                                              /s/ Timothy R. Clinton
                                              Timothy R. Clinton