**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| John Ray and Susan Ray,<br> *Petitioners*,<br> v.<br> Marc Chafetz,<br> *Respondent*. |

Civil Action No. 16-428 (CKK)

**MEMORANDUM OPINION**

Petitioner Susan Ray and Respondent Marc Chafetz are co-partners of the now-defunct Beltway Law Group LLP ("BLG"). Petitioner John Ray, Ms. Ray's ex-husband, is not formally a partner of BLG, but shares in the firm's distributions. Shortly after Respondent joined BLG, irreconcilable differences emerged between him and Ms. Ray, and the latter filed a demand for arbitration before the American Arbitration Association ("AAA") seeking dissolution of the firm. Mr. Ray, though not originally a party to the arbitration, was compelled by a North Carolina state court to join the proceedings. Ultimately, in a series of rulings spanning over two years, AAA arbitrators ordered BLG to dissolve, held in favor of Respondent on two counterclaims, and awarded Respondent attorney fees and costs pursuant to the fee-shifting provision in the parties' arbitration agreement and the AAA Rules.

Pending before the Court are a variety of motions related to those arbitral awards. Petitioners have filed two petitions to vacate, one seeking to vacate the award of attorney fees and costs ("Original Petition"), and another other seeking to vacate the final award that incorporated all prior awards issued during the arbitration ("Renewed Petition"). Petitioners have also asked the Court to appoint a receiver to administer the further winding down of BLG. Respondent, for his part, has moved to confirm the final award, and in doing

1

so, seeks post-judgment interest and attorney fees and costs associated with his counsel's efforts before this Court. Respondent also seeks sanctions pursuant to Federal Rule of Civil Procedure 11(b) against Petitioners' counsel of record, Mr. Dwight D. Murray.

Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court **DENIES** Petitioner John Ray's [1] Petition to Vacate Arbitration

---

[1] The Court's consideration has focused on the following documents and their supporting exhibits:

- Petition to Vacate Arbitration Award ("Orig. Pet."), ECF No. 1.
- Petitioner's Memorandum of Points and Authorities in Support of Petition to Vacate Arbitration Award ("Orig. Pet. Mem."), ECF No. 1-1.
- Respondent's Opposition to Motion to Vacate Arbitration Award ("Orig. Pet. Opp."), ECF No. 5.
- Petitioner's Reply to Opposition to Petition to Vacate Arbitration Award ("Orig. Pet. Reply"), ECF No. 6.
- Petitioners' Motion for Expedited Appointment of Receiver and For Status Conference ("Receiver Mot."), ECF No. 8.
- Petitioners' Renewed Petition to Vacate Arbitration Award and Motion to Appoint a Receiver ("Renewed Pet."), ECF No. 9.
- Petitioners' Memorandum of Points and Authorities in Support of Renewed Petition to Vacate and Expedited Motion for Appointment of Receiver ("Renewed Pet. Mem."), ECF No. 9-1.
- Respondent's Opposition to Renewed Motion to Vacate Arbitration Award and Expedited Motion to Appoint Receiver ("Renewed Pet. Opp."), ECF No. 12.
- Petitioners' Reply to Respondent's Opposition to Renewed Petition to Vacate Arbitration Award and Expedited Motion to Appoint a Receiver ("Renewed Pet. Reply"), ECF No. 13.
- Respondent's Surreply in Opposition to Renewed Petition to Vacate ("Renewed Pet. Surreply"), ECF No. 14-1.
- Petitioners' Memorandum in Opposition to Respondent's Motion for Leave to File Surreply ("Renewed Pet. Surreply Opp."), ECF No. 22.
- Respondent's Cross-Motion to Confirm Arbitration Award ("Cross Mot."), ECF No. 23.
- Petitioners' Opposition to Chafetz's Cross Motion to Confirm Arbitration Award ("Cross Mot. Opp."), ECF No. 24.
- Respondent's Reply in Favor of Cross-Motion to Confirm Arbitration Award ("Cross Mot. Reply"), ECF No. 25.
- Respondent's Motion for Rule 11 Sanctions Against Dwight Murray ("Sanctions Mot."), ECF No. 26, and related Opposition, ECF No. 27, and Reply, ECF No. 28.

Award; **GRANTS** Petitioners' [7] Motion to Amend Caption[2]; **DENIES** Petitioners' [8] Motion For Expedited Appointment of Receiver and For Status Conference; **DENIES** Petitioners' [9] Renewed Petition to Vacate Arbitration Award and Motion to Appoint a Receiver; **GRANTS** Respondent's [14] Motion for Leave to File Surreply in Opposition to Renewed Petition to Vacate[3]; **GRANTS** Respondent's [23] Cross-Motion to Confirm Arbitration Award, except to the extent it seeks attorney fees and costs for matters before this Court, which is **DENIED WITHOUT PREJUDICE**; and **DENIES** Respondent's [26] Motion for Rule 11 Sanctions Against Dwight Murray.

## I. BACKGROUND

Ms. Ray founded BLG in February 2012 with the assistance of her then husband, Mr. Ray. Orig. Pet. Mem. at 2. Ms. Ray, who is not an attorney, incorporated the firm in the District of Columbia because the D.C. Code permits lawyers to form partnerships with non-lawyers. Throughout the relevant period, a company owned by Ms. Ray and known as BDS Systems ("BDS") covered the operating expenses for and provided various marketing services to BLG. *Id.* The business model of BDS and BLG relied on the creation of numerous websites that were intended to attract new clients for unaffiliated trial law firms, which would pay BDS a deposit for the company's marketing expenses. In addition, once a client was sourced by BDS, and referred to the trial firm, BLG would enter into a co-

---

[2] The Court interprets Petitioners' "Motion to Amend Caption" as a request for leave to amend their Original Petition to add Ms. Ray as a petitioner, which they have done in the Renewed Petition. The Court GRANTS that request as it finds that "justice so requires." Fed. R. Civ. P. 15(a)(2).

[3] The Court finds that Respondent has met his burden of demonstrating that "the reply filed by the moving party raised new arguments that were not included in the original motion." *Longwood Vill. v. Ashcroft*, 157 F. Supp. 2d 61, 68 n.3 (D.D.C. 2011).

counsel agreement with that firm, which entitled BLG to share in the settlement or verdict that the trial firm obtained, after the trial firm recouped the amount it had deposited with BDS. Renewed Pet. Mem. at 3. According to Petitioners, by the end of 2012, "BLG had entered into a large number of co-counsel agreements and had a substantial docket of active matters pending that had significant seven-figure value." Orig. Pet. Mem. at 3.

At the end of 2012, after BLG's initial lawyer-partner resigned, Respondent joined BLG as his replacement and entered into an amended partnership agreement with Ms. Ray ("LLP Agreement"), which is the operative agreement before the Court. Renewed Pet. Mem. at 4. The partners' revenue shares, however, were set forth in a separate distribution agreement. *Id.* at 4 n.6. Petitioner John Ray, who provided marketing and business development services to BLG, *see* Orig. Pet. Mem. at 4, was entitled to 35% of BLG's revenue under the distribution agreement, while Respondent and Ms. Ray, the two partners, were entitled to 32.5% each. Orig. Pet., Attach. 4.

By June 2013, irreconcilable differences emerged between Respondent and Ms. Ray. Orig. Pet. Mem. at 4. The specifics of those differences are not relevant to the Court's analysis of the pending motions, and they are not recounted here. Suffice it to say, in October 2013, Ms. Ray filed a demand for arbitration with the AAA seeking "dissolution . . . based on failure of duty." Orig. Pet., Attach. 10. The demand was based on the arbitration provision in the LLP Agreement ("Arbitration Agreement"):

> **12.13 Resolution of Disputes.** Any controversy arising out of or related to this Agreement or the breach thereof shall be settled by arbitration in the District of Columbia, in accordance with the rules of the American Arbitration Association, and judgment entered upon the award rendered may be enforced by appropriate judicial action pursuant to the District of Columbia Code of Civil Procedure. The arbitration panel shall consist of one member, which shall be a person agreed to by each partner to the dispute within 30 days following notice by one party that he desires that a matter be

arbitrated. If the parties are unable within such 30 day period to agree upon an arbitrator, then the panel shall be one arbitrator selected by the District of Columbia office of the American Arbitration Association, which arbitrator shall be experienced in the area of legal partnerships and who shall be knowledgeable with respect to the subject matter area of the dispute. The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by him or the prevailing party or such costs shall be allocated by the arbitrator. The arbitration panel shall render a decision within 30 days following the close of presentation by the parties of their cases and any rebuttal. The parties shall agree within 30 days following selection of the arbitrator to any prehearing procedures or further procedures necessary for the arbitration to proceed, including interrogatories or other discovery; provided, in any event each Partner shall be entitled to discovery in accordance with the District of Columbia Code of Civil Procedure.

Orig. Pet., Attach. 3 at 13.

Pursuant to the terms of the Arbitration Agreement, the parties jointly appointed Judge Richard A. Levie to arbitrate their dispute. *See* Orig. Pet. Mem. at 7. In December 2013, Ms. Ray amended the demand to include additional counts against Respondent for breaches of contractual and fiduciary duties. Respondent filed a counterclaim in January 2014, likewise seeking dissolution of BLG. *See* Orig. Pet., Attach. 14 at 1–2. Then, on March 31, 2014, Judge Levie issued an Interim Award in which he concluded that "a Liquidating Event has occurred and that dissolution is appropriate at this time," noting that there had been "a complete breakdown of trust and confidence between the two parties." Orig. Pet., Attach. 12 at 2–3. Judge Levie also denied Ms. Ray's motion to appoint a receiver to administer the dissolution of BLG, holding that "any issues to be decided by any receiver insofar as they arise in the dissolution can be decided by the Arbitrator" and noting the practical reality that BLG at the time lacked any funds to pay for a receiver. *Id.* at 2, 5 ("Claimants failed to persuade the Arbitrator that there currently is a need to appoint a receiver to try to adjudicate matters that are more properly presented to the Arbitrator.").

To facilitate the winding down of BLG, Judge Levie ordered Respondent's counsel to establish "a trust escrow account [the "Escrow Account"] in the District of Columbia . . . for the handling of funds." *Id*. at 4. Respondent's counsel was prohibited from making "disbursements from the Escrow Account without either express written consent of [Ms. Ray] to the specific disbursements (amount, payee, and time) or an order of the Arbitrator." *Id*. at 6.

In between the filing of the demand for arbitration and Judge Levie's Interim Order, two related actions were brought in North Carolina state court against BLG by Mr. Ray and BDS, respectively. Both lawsuits sought compensation for services allegedly rendered to BLG. Orig. Pet. Mem. at 7–8; Orig. Pet., Attach. 14 at 3. Because Ms. Ray held a proprietary interest in the outcome of these lawsuits that conflicted with the interests of BLG—because she owned BDS and was married to Mr. Ray—Judge Levie held that Ms. Ray was "not in a position to objectively represent the interests of BLG in these lawsuits," and permitted Respondent to represent BLG in the two North Carolina lawsuits. Orig. Pet., Attach. 12 at 5. Respondent then sought to the compel the arbitration of those disputes. Orig. Pet., Attach. 14 at 3.

The Interim Award essentially resolved the primary dispute between the parties that led to the arbitration—the dissolution of BLG—and ordered that "the Partnership shall continue solely for the purpose of winding up its affairs in an orderly manner . . . ." Orig. Pet., Attach. 12 at 6. The issues that remained, and that would eventually be resolved by another arbitrator—Robert E. Margulies—related to the award of attorney fees and costs, Respondent's counterclaims, and supervision of the winding down process, as required by the Interim Award. *Id*. at 5–6. Accordingly, in April 2014, Respondent filed a motion for

fees, costs, and sanctions, seeking a determination that he was the prevailing party and an award of attorney fees and costs under the fee shifting provision of the Arbitration Agreement against Ms. Ray, as well as sanctions under the AAA Rules against her attorneys for alleged misconduct during the course of the arbitration. Sanctions Mot., Attach. 1 at 13 ("In addition to shifting Respondent's fees and expenses onto Claimant herself, the Arbitrator has inherent authority to order that her attorneys (and their law firms) be jointly and severally liable for such amounts as a sanction for their well-documented bad-faith behavior."). Then, in October 2014, Respondent succeeded in having the North Carolina cases referred to arbitration; amended his counterclaims shortly thereafter to add Mr. Ray to the proceedings; and moved for partial summary judgment on the counterclaims. *See* Orig. Pet. Opp., Attachs. 2, 4; Orig. Pet., Attach. 14 at 3.

The resolution of these issues, however, was stymied by two events. First, also in October 2014, Judge Levie resigned without explanation, and was replaced with Arbitrator Judith Ittig in December 2014 by the AAA. Orig. Pet., Attach. 14 at 5. In February 2015, however, the AAA notified the parties that Arbitrator Ittig, in response to Petitioners' objections that she lacked sufficient experience "in the area of legal partnerships and . . . [knowledge of] the subject matter area of the dispute," as required by the Arbitration Agreement, had determined that "[l]aw firm dissolutions and mass tort law firm partnerships [were] not areas of [her] expertise." The AAA also relayed that Arbitrator Ittig had suspended the proceedings until the parties made a "deposit in the amount of $18,000 for her anticipated compensation." If the parties did not make the deposit, the AAA warned that "pursuant to [AAA] Rule R-57(f), [the arbitration] will be terminated." Orig. Pet., Attach. 13 at 3. That came to pass several weeks later, in the beginning of March, when the

AAA informed the parties that it had terminated the proceedings "inasmuch as the requested deposit for compensation was not received within the time required . . . ." The AAA added that it had received a credit card authorization from Respondent for his share of the arbitral fees, but that the "balance of the deposit was left outstanding." *Id.* at 1.

Several days after the arbitration was terminated, Respondent's counsel wrote to the AAA and requested that the proceedings be reopened. According to that letter, in the period between the suspension and termination of the arbitration, Respondent had requested "permission to pay the [outstanding amount] from the Escrow Account AAA ordered be establish[ed] to administer [BLG's] funds," but received no response from the AAA. Orig. Pet., Attach. 14 at 8. After the termination, Respondent's counsel apparently spoke with a representative of the AAA, who relayed that Arbitrator Ittig "did not believe she had jurisdiction over the Escrow Account since the matter had been terminated, and . . . . AAA had determined that it was legally prevented from reversing the termination since there was no express provision for it under the [AAA] rules." *Id.* at 9. Given the AAA's position, Respondent's counsel "determined that [he had] a duty to pay the [outstanding amount] so that the AAA [could] conclude the winding up of Beltway's affairs." Respondent's counsel did so by sending the AAA a wire payment from the Escrow Account for the remainder of the deposit. *Id.* The letter concluded by warning that if the AAA continued to decline to reopen the arbitration, Respondent would "file an emergency motion for a temporary restraining order seeking judicial intervention." *Id.* at 10.

The following week, the AAA wrote to the parties again and reported that it had "made the administrative decision to reopen this matter for further administration." Orig. Pet., Attach. 15 at 2. The AAA explained that the "administrative decision was made in

light of Respondent Chafetz's offer to pay the outstanding deposit required, or alternatively, a suggestion of a different method under which payment could be made." The AAA also determined that Arbitrator Ittig would be removed and replaced pursuant to the AAA Rules without input from the parties. *Id.* The AAA adopted Arbitrator Ittig's estimate as the amount due from the parties to continue the arbitration, and instructed the parties that "the AAA cannot authorize the use of funds held in the escrow account that was established in accordance with Judge Levie's Interim Order." *Id.* at 3. Accordingly, the AAA did not accept the monies wired from the Escrow Account by Respondent's counsel as payment for the arbitral fees, but rather, Respondent eventually paid Petitioners' share at his own expense. The AAA held the wired amount in trust and subsequently returned it to the Escrow Account. *See* Orig. Pet., Attach. 2 at 5 ("Respondent (Chafetz) made a deposit from the escrow account. After Susan Ray objected, Chafetz replaced the funds with other monies paid directly by Mr. Chafetz."); Renewed Pet., Attach. 2 at 2 ("The [AAA] is directed to return the sum of $12,000 to Beltway Law Group, LLP.").

When the arbitration reopened, the AAA appointed Arbitrator Robert E. Margulies to replace Arbitrator Ittig, and the arbitration progressed on the outstanding issues raised in Respondent's motion for summary judgment and motion for attorney fees, costs, and sanctions. *See* Renewed Pet. Mem. at 6. In the interim between Arbitrator Margulies's appointment and his rulings on those issues, Mr. Ray moved in July 2015 to stay proceedings to conduct additional discovery. In that motion, Mr. Ray alleged in summary fashion that he had been "denied any rights to discovery of any nature in this proceed[ing] . . . ." Renewed Pet. Opp., Attach. 1 at 3. Ultimately, Arbitrator Margulies declined to stay proceedings, and on September 24, 2015, issued an "Interim Order" on the motion for

partial summary judgment that awarded $124,098.48 in favor of Respondent for "Breach of Contract, Conversion and Good Faith and Fair Dealing . . . ." Orig. Pet. Opp., Attach. 5 at 2. Subsequently, in February 2016, Arbitrator Margulies issued an "Order on Various Outstanding Motions," where he, *inter alia*: (i) denied Petitioners' objections to the reopening of the arbitration after it was terminated for non-payment; (ii) denied awarding sanctions against Ms. Ray and her attorneys; (iii) awarded attorney fees and costs against Petitioners, jointly and severally; and (iv) denied appointing a receiver, noting that Judge Levie previously denied the same request. Orig. Pet., Attach. 2 at 1–3. Petitioners were provided ten days to object to Respondent's counsel's "fee affidavit setting forth his legal efforts . . . ." *Id*. at 3. Mr. Ray filed the Original Petition shortly after the  issuance of the February 2016 Order.

Then, in May 2016, Arbitrator Margulies issued a "Final Award," which incorporated "prior Orders and/or Awards entered into in [the arbitration]" and determined that Respondent was entitled to $506,050.18 in attorney fees and costs, "to be paid or reimbursed, such as the case may be, against [BLG], Susan Ray and John Ray, jointly and severally . . . ." Renewed Pet., Attach. 2 at 2–3. Following the issuance of the Final Award, Petitioners jointly filed the Renewed Petition, to which the Court now turns.

## II. LEGAL STANDARD

As the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") "has repeatedly recognized, judicial review of arbitral awards is extremely limited. Courts do not sit to hear claims of factual or legal error by an arbitrator." *Owen-Williams v. BB & T Inv. Servs., Inc.*, 717 F. Supp. 2d 1, 9 (D.D.C. 2010) (Kollar-Kotelly, J.) (internal quotation marks and citations omitted); *see also FBR Capital Markets & Co v.*

*Hans*, 985 F. Supp. 2d 33, 36 (D.D.C. 2013) ("[T]he burden facing petitioners who seek judicial vacatur of arbitration awards is exceedingly high. . . . It is not enough for petitioners to show that the panel committed an error–or even a serious error." (internal quotation marks omitted)). Pursuant to § 10(a) of the Federal Arbitration Act ("FAA"), the Court may vacate an award on only four limited statutory bases: (1) the award was "procured by corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrators, or either of them"; (3) the arbitrators were guilty of misconduct or misbehavior "by which the rights of any party have been prejudiced"; or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)–(4). Conversely, "under the terms of § 9 of the FAA, a court must confirm an arbitration award unless it is vacated, modified, or corrected . . . ." *Owen-Williams*, 717 F. Supp. 2d at 10 (internal quotation marks and alterations omitted).

The United States Supreme Court in *Hall St. Assocs., L.L.C. v. Mattel, Inc.* instructed that § 10 provides "the FAA's exclusive grounds for expedited vacatur . . . ." 552 U.S. 576, 584 (2008). Before *Hall Street*, however, the D.C. Circuit "recognized that, in addition to the four statutory grounds listed in [§ 10(a)], an arbitration award may be vacated if it is in 'manifest disregard of the law.'" *Owen-Williams*, 717 F. Supp. 2d at 10 n.7. Absent further decisions of the Supreme Court or the D.C. Circuit, it "remains an open question in this Circuit whether the 'manifest disregard' standard survives *Hall Street*." *Id*. Because the Court does not find Petitioners' contentions on this basis to be meritorious, the Court need not and does not resolve that legal question here.

## III. DISCUSSION

A. *Petitions to Vacate the Final Award*

Between the Original and Renewed Petitions, Petitioners seek vacatur of the Final Award on each of the four statuary bases recognized by the FAA, and for manifest disregard of the law. All of these challenges are addressed in turn.

1.   Vacatur Based on § 10(a)(1) – "Undue Means"

"Federal courts consistently refuse to vacate an arbitral award under § 10(a)(1) [for undue means] unless the movant's submissions meet three cumulative conditions." *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 254 (D.D.C. 2013) (collecting cases). The first of those conditions is dispositive of the issues raised by Petitioners. Namely, "the party seeking vacatur must demonstrate by clear and convincing evidence that its opponent actually engaged in fraudulent conduct or used undue means during the course of the arbitration." *Id*. Importantly, "[u]nder this first requirement, ordinary misconduct will not suffice; the alleged fraudulent acts must have been so prejudicial that they effectively denied the opposing party a 'fundamentally fair hearing.'" *Id*. Conduct by an attorney that amounts to "mere sloppy or overzealous lawyering" does not "constitute[] 'undue means.'" *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992). Rather, the term "clearly connotes behavior that is immoral if not illegal." *Id*.

Petitioners posit three ways in which the Final Award was "procured by undue means": (i) the "award was the product of bias which resulted in the improper re-opening of a terminated arbitration," which indicates a bias in favor of Respondent by the arbitrator; (ii) "bias was also demonstrated by the AAA when it received money illegally withdrawn from BLG's escrow account for the payment of arbitration fees"; and (iii) Respondent sent

a letter to the AAA, which demanded that the arbitration be reopened, threatened the AAA with legal action, and disparaged Petitioners. Renewed Pet. Mem. at 7–9.[4]

However, neither the reopening of the arbitration nor the acceptance of arbitral fees constitute "undue means" because these actions did not deny Petitioners a "fundamentally fair hearing"—if anything, they facilitated the hearing. Nor do these actions appear to constitute misconduct, let alone the type of immoral or illegal behavior that can justify vacatur. The decision to reopen the arbitration was a prerogative of the AAA, *see infra* at 19–20, and Respondent ultimately paid the arbitral fees at his personal expense, *see supra* at 9. That Respondent's counsel under exigent circumstances wired monies to pay for Petitioners' share of the arbitral fees, to arbitrate a dispute regarding the parties' interests in the partnership, out of the Escrow Account established for the benefit of the partnership, without consent from Petitioners or the AAA, does not in this Court's view constitute the type of unethical or illegal conduct that can justify vacatur.

The Court has also reviewed the letter that Petitioners claim allowed Respondent to obtain the Final Award by undue means because it threatened the AAA with litigation and disparaged Petitioners. The Court finds this contention to be without merit. The letter articulates the procedural history of the arbitration, the circumstances surrounding the suspension and termination of the proceedings, conveys Respondent's offer to pay for Petitioners' share of the arbitral fees, and informs the AAA that Respondent will seek judicial review of the AAA's determination if it does not reopen the matter. *See* Orig. Pet.,

---

[4] The Court notes that the first two contentions appear to be more properly styled as challenges under § 10(a)(2) for evident partiality by the arbitral tribunal. Regardless, these contentions do not rise to meet the exceedingly high burden that is required for the Court to find vacatur on the basis of evident partiality.

Attach. 14. The letter is not an example of "sloppy or overzealous lawyering," which by itself is insufficient for vacatur, let alone an instance of conduct that is so immoral or illegal that it justifies vacatur. Finally, even were the Court to entertain the notion that the letter constituted misconduct by Respondent's counsel, the effect of the letter was, at worst, that the arbitration was reopened. In other words, the letter did not deprive Petitioners of a "fundamentally fair hearing." Accordingly, for all of the foregoing reasons, the Court finds that the Final Award was not obtained by undue means.

2.   Vacatur Based on § 10(a)(2) – "Evident Partiality"

In their Renewed Petition, Petitioners include a headnote that reads: "The Award Should Be Vacated Due to Evident Partiality." But the text that follows the headnote discusses vacatur on the basis of § 10(a)(3) for misconduct by the arbitrator. Renewed Pet. Mem. at 9. In their Reply, Petitioners appear to recognize this error, but indicate that they do "not waive the evident partiality argument as a basis for vacatur. At the same time, Petitioners also recognize that this is a difficult, but not impossible burden for Petitioners to meet." Renewed Pet. Reply at 10. The Court agrees with that assessment.

"A party challenging an arbitration award because of evident partiality bears a heavy burden to establish specific facts that indicate improper motives on the part of an arbitrator. The alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain or speculative . . . ." *Thian Lok Tio v. Washington Hosp. Ctr.*, 753 F. Supp. 2d 9, 17 (D.D.C. 2010) (internal quotation marks and citations omitted). Although an "arbitrator's legitimate efforts to control the proceedings in an expeditious manner often may be viewed as abrasive or disruptive to a disappointed party[,] [s]uch displeasure . . . fails to qualify as grounds for vacating an arbitration award." *Alston v. UBS*

*Fin. Servs., Inc.*, No. CIV.A. 04-01798(HHK), 2006 WL 20516, at *3 (D.D.C. Jan. 2, 2006) (internal quotation marks and citations omitted). Ultimately, in order to succeed on the basis of § 10(a)(2), Petitioners must demonstrate "more than an amorphous institutional predisposition toward the other side . . . ." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998).

The only specific instance of partiality described in the Reply is the AAA's decision to reopen the arbitration. Renewed Pet. Reply at 11–12. However, Petitioners do not explain what "improper motive" this incident imbued on the AAA, and after reviewing the record as a whole, the Court finds none. A desire to continue the proceedings, even if it were a motive, is not improper; and a general predisposition toward Respondent by the AAA, even if it were a reality, does not suffice for vacatur. Petitioners also cite a laundry list of other incidents as "evidence" of partiality, including "the re-writing of the LLP Agreement by Judge Levie, the re-opening of a terminated arbitration, the denial of discovery to John Ray when all other parties were entitled to discovery, the improper appointment of Arbitrator Margulies, and the award of sanctions against BLG that allowed Respondent to pilfer the assets of BLG . . . ." *Id.* at 12. These contentions fail to meet the "heavy burden to establish specific facts that indicate improper motives . . . ." *Thian Lok Tio*, 753 F. Supp. 2d at 17 (internal quotation marks omitted). Rather, they amount to "a series of unfavorable rulings by the arbitrator," that while they "may produce an appearance of bias in the eyes of the unsuccessful party," do not justify this Court vacating the Final Award on the basis of evident partiality. *Id.* at 18. Accordingly, the Final Award does not warrant vacatur under § 10(a)(2).

3.   Vacatur Based on § 10(a)(3) – Misconduct by the Arbitrator

Under § 10(a)(3) of the FAA, the Court may vacate the Final Award if it determines that an arbitrator was "guilty of misconduct in refusing to postpone [a] hearing . . . ." Here, Petitioners assert that Arbitrator Margulies was guilty of such misconduct when he refused to stay proceedings at Mr. Ray's request in July 2015 in order to allow Mr. Ray to conduct additional discovery. Renewed Pet. Mem. at 10; *see supra* at 9. On this issue, the inquiry before the Court is "not whether this Court might have exercised its discretion to grant a postponement under the relevant circumstances, but whether the arbitrator's decision to deny the continuance was unreasonable or an abuse of discretion." *Equitas Disability Advocates, LLC v. Daley, Debofsky & Bryant, P.C.*, 177 F. Supp. 3d 197, 215 (D.D.C. 2016), *aff'd sub nom. Equitas Disability Advocates, LLC v. Feigenbaum*, No. 16-7060, 2016 WL 7335677 (D.C. Cir. Dec. 2, 2016). On the other hand, "the failure of an arbitrator to grant a postponement or adjournment [that] results in the foreclosure of the presentation of 'pertinent and material evidence,' is an abuse of discretion" that may warrant vacatur. *Naing Int'l Enterprises, Ltd. v. Ellsworth Assocs., Inc.*, 961 F. Supp. 1, 3 (D.D.C. 1997).

Petitioners claim that "after Mr. Ray was added as a party to the arbitration, he was immediately faced with a Motion for Partial Summary Judgment." Renewed Pet. Mem. at 10. That may be true in a technical sense, as Mr. Ray was joined in October 2014 shortly after he was compelled to proceed to arbitration by a North Carolina state court.  In the same month, Respondent amended his counterclaims to include Mr. Ray and moved for partial summary judgment. *See supra* at 7. However, it is also evident that Mr. Ray was well aware of the arbitral proceedings before he was formally added as a party, *see* Renewed Pet. Opp., Attach. 9 (August 2014 letter from Mr. Ray informing Judge Levie

that Mr. Ray was filing a sanctions motion against him in North Carolina); and that Mr. Ray did not file his motion to stay proceedings until July 2015—nine months after he was added to the arbitration. In that motion, Mr. Ray claimed that he was denied "any rights to discovery of any nature" in the arbitration. Renewed Pet. Opp., Attach. 1 at 3. Respondent strenuously objects that Mr. Ray in fact received "thousands of pages of documents in discovery—all of the discovery exchanged between Respondent and Mrs. Ray—and he has *never* requested any discovery in [the arbitration]." Renewed Pet. Opp. at 7. In their Reply, Petitioners seem to concede that Mr. Ray had access to discovery, but assert that he was dissatisfied with Respondent's counsel's control over the online service, "Dropbox," that was used to store the materials. Renewed Pet. Reply at 12. Regardless of the exact nature of the discovery dispute, from the record before it, the Court does not see any basis to conclude that Arbitrator Margulies's decision to deny Mr. Ray's request for a stay to conduct additional discovery was unreasonable or an abuse of discretion, especially given the time that had elapsed since Mr. Ray was formally joined as a party to the arbitration. *See Al-Haddad Commodities Corp. v. Toepfer Int'l Asia Pte., Ltd.*, 485 F. Supp. 2d 677, 682 (E.D. Va. 2007) (finding no misconduct in tribunal's "decisions to hold a hearing 'just six weeks' after the arbitration was demanded, and to reject [respondent's] request to adjourn the arbitration hearings"). Furthermore, and crucially, Petitioners have made no representation to the Court as to what specific, additional evidence Mr. Ray hoped to have presented before Arbitrator Margulies if he had been permitted to conduct additional discovery. Absent this information, "there is no basis on which the Court could conclude that [Mr. Ray] was prevented from presenting 'pertinent and material' evidence" due to Arbitrator Margulies's denial of his motion to stay. *Equitas Disability,* 177 F. Supp. 3d at

217.[5] Accordingly, the Court finds that vacatur is not warranted under § 10(a)(3).

        4.   Vacatur Based on Manifest Disregard of the Law

As discussed earlier in this opinion, *see supra* at 11, the legal viability of the manifest disregard of the law doctrine is a question that has not been resolved. Nevertheless, the Court will address the factual predicates involved in these claims.

In order to establish manifest disregard of the law as a basis for vacatur, Petitioners must demonstrate that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Affinity Fin. Corp. v. AARP Fin., Inc.*, 468 F. App'x 4, 5 (D.C. Cir. 2012). None of Petitioners' contentions meet this difficult standard.

Petitioners assert that the AAA manifestly disregarded the law by reopening the arbitration after it had been terminated. Orig. Pet. Mem. at 13–15. The Crux of this claim is that after the AAA terminated the arbitration, there "was no AAA Rule permitting" the AAA to reopen the arbitration. *Id.* at 15. Petitioners also highlight that Respondent's counsel's March 2015 letter to the AAA memorialized a conversation during which a representative of the AAA purportedly said that the organization "had determined that it was legally prevented from reversing the termination since there was no express provision for it under the [AAA] rules." *See* Orig. Pet. Reply at 10; Orig. Pet., Attach. 14 at 9. One

---

[5] In their Reply, Petitioners also contend that "arbitrator misconduct was further demonstrated when a terminated arbitration was re-opened illegally and when the arbitrator improperly selected to decide the case outside his authority." Renewed Pet. Reply at 14. No legal or factual support is provided for this position, and the Court finds it to be without merit, and the Court notes that the AAA, and not the arbitrator, determined to reopen the arbitration.

week later, the AAA did in fact reopen the arbitration, and Arbitrator Margulies later rejected Petitioners' objections to continued proceedings on that basis. *See supra* at 8, 10.

Petitioners' claim fails, as Respondent correctly asserts, because while there may be no AAA Rule that permits the reopening of a terminated arbitration, the record contains no indication that there is an AAA Rule that *forbids* the AAA from taking that action. *See* Orig. Pet. Opp. at 7. Given that there is no AAA Rule forbidding the reopening of a terminated proceeding, and no other viable legal doctrine has been presented that precludes the AAA from taking that action—let alone one that was acknowledged by the AAA or the arbitrators—the Court cannot conclude that "the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether" by reopening the arbitration, or that "the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." That the AAA initially thought they should not reopen the arbitration but ultimately decided to do so does not change this analysis.[6]

Moreover, the Supreme Court has instructed that "procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (internal quotation marks omitted). "So, too, the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Id.* (internal quotation

---

[6] The two cases cited by Petitioners in their letter to the AAA, Orig. Pet., Attach. 16, and which they reference in the Original Petition, Orig. Pet. Mem. at 11, are factually inapposite, as they stand for the proposition that "a party's failure to pay its share of arbitration fees breaches the arbitration agreement and precludes any subsequent attempt by that party to enforce that agreement." *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1294 (10th Cir.), *cert. denied*, 136 S. Ct. 373 (2015); *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (same). Here, the party seeking to reopen the arbitration paid its share of the arbitral fees.

marks and alterations omitted). Whether the arbitration could be reopened after it was terminated is a procedural arbitrability issue that was and remains properly left to the arbitrators in the underlying proceeding, especially given that they are "more expert than the district court at interpreting and applying [their] own rules . . . ." *Williams v. Tully*, No. C-02-05687 MMC, 2005 WL 645943, at *5 (N.D. Cal. Mar. 18, 2005); *see also Union Cent. Life Ins. Co. v. Andraos*, No. 1:09-CV-758, 2011 WL 6091771, at *5 (S.D. Ohio Oct. 21, 2011), *report and recommendation adopted*, No. C-1-09-758, 2011 WL 6100275 (S.D. Ohio Dec. 7, 2011) (under similar factual circumstances, after an underlying arbitration had been terminated for non-payment of fees, holding that "plaintiff's argument that the parties' non-payment of arbitration fees equates to a waiver of arbitration is a procedural issue which should be determined by the arbitrator. The payment of arbitration fees is a condition precedent to arbitration, similar to the required submission of documents and abiding by time limits, which are considered procedural issues to be decided by an arbitrator.").[7]

Petitioners also contend that the termination rendered Arbitrator Margulies *functus officio*, which would invalidate the Final Award. Orig. Pet. Mem. at 15. That doctrine holds that "once an arbitrator has made and published a final award, his authority is exhausted

---

[7] The Court notes two practical realities that lend further support for its decision here. First, the arbitration was terminated because Petitioners did not pay their ratable share of the arbitral fees. To allow parties to challenge arbitral awards issued on the merits because they failed to pay their fair share of arbitral fees would be counter to the "emphatic federal policy in favor of arbitral dispute resolution . . . ." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (internal quotation marks omitted). Second, Petitioners do not contend that the AAA was completely deprived of jurisdiction by its termination of the arbitration proceedings, but rather that Respondent was required to file a demand for arbitration and start anew. To compel that result would likewise be contrary to the federal policy that favors arbitration as an expeditious dispute resolution mechanism.

and he . . . can do nothing more in regard to the subject matter of the arbitration." *Hill v. Wackenhut Servs. Int'l*, 971 F. Supp. 2d 5, 12 (D.D.C. 2013) (internal quotation marks and alterations omitted). An arbitral award is final if it "intended by the arbitrator to be his complete determination of every issue submitted to him." *Am. Postal Workers Union v. U.S. Postal Serv.*, 422 F. Supp. 2d 240, 246 (D.D.C. 2006) (internal quotation marks omitted). However, the decision to terminate the arbitration did not determine *any* issue, and was not *final* as to any issue because, as Petitioners concede, those issues could have been arbitrated again by Respondent filing a new demand with the AAA. Orig. Pet. Reply at 11. Petitioners appear to concede the point altogether by stating that the decision was "not technically an award." *Id*. Accordingly, the arbitrator was not rendered *functus officio*.

Petitioners focus their other manifest disregard challenges on Arbitrator Margulies's award of attorney fees and costs. These contentions are factually infirm. Most notably, Petitioners repeatedly assert that Arbitrator Margulies manifestly disregarded the law, or otherwise acted improperly, by awarding sanctions against Petitioners and BLG.[8] *See, e.g.*, Renewed Pet. Reply at 15 ("Arbitrator Margulies issued an initial order awarding fees and costs as sanctions"); Orig. Pet. Mem. at 18 ("the award of sanctions should be vacated"). The Court charitably construes Petitioners' claim to be that Arbitrator Margulies

---

[8] In the Original Petition, Arbitrator Margulies's "award of sanctions" is cast as a violation of § 10(a)(4), which provides for vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." To succeed on this basis, "a party must demonstrate that the arbitrator strayed from interpretation and application of the agreement and effectively dispensed his own brand of industrial justice." *Republic of Argentina v. AWG Grp. Ltd.*, No. CV 15-1057 (BAH), 2016 WL 5928464, at *15 (D.D.C. Sept. 30, 2016) (internal quotation marks and alterations omitted). Nothing in the record supports such a finding, not least with respect to Arbitrator Margulies's award of attorney fees and costs, which was expressly contemplated by the Arbitration Agreement.

awarded attorney fees and costs *as a type of sanction*. Even then, Arbitrator Margulies did nothing of the sort. The February 2016 Order specifically addressed Respondent's sanctions motion against Ms. Ray and her attorneys, and held that although the conduct of Ms. Ray's attorneys "bordered upon the precipice of professionalism . . . they do not warrant monetary sanctions and none will be awarded." Moreover, although Arbitrator Margulies found that "Ms. Ray's participation created difficulties for the prior arbitrators and [himself] in adjudicating the claims, no sanctions will be awarded against her." Orig. Pet., Attach. 2 at 2. Arbitrator Margulies went on to award attorney fees and costs against Petitioners, jointly and severally, as permitted by the fee-shifting provision in the parties' arbitration agreement and the AAA Rules, which are incorporated by reference in the Arbitration Agreement. *See* Orig. Pet., Attach. 3 at 13; AAA Rule R-47(d) ("The award of the arbitrator(s) may include . . .  an award of attorneys' fees if . . . it is authorized by law or their arbitration agreement.").

Petitioners' contention that they were not permitted to object to the award of attorney fees and costs is also contradicted by the factual record before the Court. The February 2016 Order plainly states that Petitioners could file an objection to Respondent's counsel's fee affidavit within 10 days. Orig. Pet., Attach. 2 at 3. That Petitioners apparently chose not to do so is irrelevant. *See* Renewed Pet. Opp., Attach. 13 at 1 (referring to the February 2016 Order, Petitioners' counsel wrote only that the "objections of the Rays are well known to this AAA proceeding"). Likewise, although Petitioners claim that Arbitrator Margulies failed to apply a reasonable standard in awarding fees, and that he focused solely on Respondent's counsel's pedigree, that is not correct. The fee award was based on "the experience and professional expertise demonstrated by [Respondent's counsel and his

colleagues] . . . [and] that the fees regularly charged by [Respondent's counsel and his colleagues], based on their expertise, education, experience and standing in the legal community, warrants the assessment of such fees." Renewed Pet., Attach. 2. at 3; Renewed Pet. Surreply at 6–7 (indicating that Respondent's counsel submitted briefing on the appropriateness of his fee rates); *see also UBS Fin. Servs., Inc. v. Padussis*, 127 F. Supp. 3d 483, 498–99 (D. Md. 2015), *aff'd*, 842 F.3d 336 (4th Cir. 2016) (noting that a "court must defer to the arbitrators' findings as to the appropriate amount of attorneys' fees" (internal quotation marks and alterations omitted)). In sum, Petitioners' fee-related claims do not warrant vacatur on any ground permitted by the FAA. An award of attorney fees and costs to the prevailing party was expressly permitted by the Arbitration Agreement and the AAA Rules, and there is no indication in the record that Arbitrator Margulies acted improperly or misapplied the law when determining which party prevailed and the appropriate fee award.

Petitioners' other contentions are similarly flawed. They claim that Arbitrator Margulies manifestly disregarded the law when he refused to stay the arbitration after Petitioners filed their Original Petition. Renewed Pet. Mem. at 11. However, Petitioners cite to no principle of law that unequivocally entitled them to a stay of the arbitration when the February 2016 Order was challenged in this Court. Petitioners also claim that Arbitrator Margulies was appointed in contradiction of the Arbitration Agreement because he was not "selected by the District of Columbia office of the American Arbitration Association," and because he practices in New Jersey rather than in the District of Columbia. *See* Renewed Pet. Mem. at 1 n.2, 12; Orig. Pet. Mem. at 11. However, the portion of the Arbitration Agreement that sets forth this criteria—and the Court notes that, in any event, there is no

requirement that the arbitrator himself be located or barred in the District of Columbia—only applies to the initial selection of an arbitrator "within 30 days following notice by one party that he desires that a matter be arbitrated . . . ." Orig. Pet., Attach. 3 at 13. The parties jointly agreed on the appointment of the first arbitrator, Judge Levie. Orig. Pet. Mem. at 7. The Arbitration Agreement does not specify the procedure for replacing an arbitrator, but does incorporate the AAA Rules, which the AAA followed in appointing Arbitrator Margulies to replace Arbitrator Ittig. Orig. Pet., Attach. 15 ("Pursuant to Rules R-20 and R-12(c), the AAA will fill this vacancy without the submission of an additional list to the parties."). Accordingly, the Court finds that the appointment of Arbitrator Margulies was in conformity with the Arbitration Agreement. [9]

For all of the foregoing reasons, the Court concludes that the Final Award was not rendered in manifest disregard of the law. In reaching that conclusion, the Court has now considered each of the bases for vacating the Final Award raised in Petitioners' pleadings, and has found that none of them warrant vacatur. Accordingly, the Court DENIES Petitioners' request to vacate the Final Award, or any preliminary award incorporated into the Final Award.

---

[9] Petitioners also assert in summary fashion that Arbitrator Margulies's award of attorney fees and costs was in violation of the Arbitration Agreement because it was "not rendered in 30 days." According to Petitioners, "Respondent's Motion for fees and costs was filed on April 4, 2014. Almost two years passed before [Arbitrator] Margulies issued his award." Renewed Pet. Mem. at 12. The Arbitration Agreement provides that the "arbitration panel shall render a decision within 30 days following the close of presentation by the parties of their cases and any rebuttal." Orig. Pet., Attach. 3 at 13. Respondent, however, objects that "this provision appears to refer to the close of an *evidentiary* hearing at which testimony is given, not to summary motions practice, and the Arbitration never proceeded that far." Renewed Pet. Opp. at 10. The Court agrees with this assessment, and moreover, does not find this to be a valid basis for vacating the Final Award. *See also R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995) ("A 'trivial departure' from the parties' agreement, however, may not bar enforcement of an award.").

B.  *Motion to Confirm*

Respondent seeks confirmation of the Final Award and entry of judgment.

The Final Award provides for the following monetary amounts in favor of Respondent: (i) $80,248.48 "against [BLG] and Susan and John Ray, said sum to be assessed against the interests of Susan and John Ray in said entity first to the extent of their interest, if any"; (ii) $43,850.00 "against Susan Ray and [BLG] said sum to be assessed against the interest of Susan Ray first to the extent of her interest in said entity"; and (iii) attorney fees and costs in the amount of "$506,050.18, to be paid or reimbursed, such as the case may be, against [BLG], Susan Ray and John Ray, jointly and severally . . . ." Renewed Pet., Attach. 2 at 2 (Final Award); Orig. Pet. Opp., Attach. 5 at 3 (September 24, 2015 Interim Order, incorporated by reference into the Final Award). According to the pleadings, $189,016.77 of the Final Award has already been paid out of BLG's distributions to Ms. Ray. Cross Mot. at 2. The Court offers no view on the propriety of this action. For the reasons described below, to the extent there are disagreements between the parties that arise out of the continued winding down of BLG, those disagreements are not for this Court to decide on the basis of the pending motions. The remaining amount currently due to Respondent under the Final Award is $441,131.89, which represents the $43,850.00 award against Ms. Ray, and $397,281.89 against Petitioners, jointly and severally, as compensation for Respondent's attorney fees and costs. *Id*. Accordingly, Respondent moves the Court to confirm the Final Award, and enter judgment in the amount of $441,131.89, apportioned between Petitioners in the manner just described.

Pursuant to § 9 of the FAA , the Court "must" confirm the Final Award "unless [the award] is vacated, modified, or corrected as prescribed" in §§ 10 or 11 of the FAA. *Hall*

*Street*, 552 U.S. at 582 (internal quotation marks omitted); *Int'l Thunderbird Gaming Corp. v. United Mexican States*, 473 F. Supp. 2d 80, 83 (D.D.C. 2007) ("in the absence of a legal basis to vacate, this court has no discretion but to confirm the award"), *aff'd*, 255 Fed. App'x 531 (D.C. Cir. 2007). Because the Court concludes that there is no valid basis to vacate the Final Award, the Court GRANTS Respondent's request to confirm the Final Award and for entry of judgment in the amount of $441,131.89.

The Court now turns to two ancillary issues raised in the Cross-Motion to Confirm. First, Respondent requests post-judgment interest. Cross. Mot. at 2. Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." The Court's judgment in this matter is a "money judgment" that falls within the purview of § 1961. *See Mediso Med. Equip. Developing Servs., Ltd v. Bioscan, Inc.*, 75 F. Supp. 3d 359, 364 (D.D.C. 2014); *McVay v. Halliburton Energy Servs., Inc.*, 688 F. Supp. 2d 556, 565 (N.D. Tex. 2010), *aff'd*, 608 F. App'x 222 (5th Cir. 2015) ("Because a district court's confirmation of an arbitration award is equivalent, in every respect, to any other judgment entered by the court, it is also subject to post-judgment statutory interest under § 1961."). Accordingly, Respondent is entitled to post-judgment interest at the rate provided in § 1961 from the date of this Court's judgment until the judgment is paid.

Respondent also seeks attorney fees and costs for his efforts before this Court. Cross. Mot. at 3. The FAA does not provide independent grounds for attorney fees, and absent an underlying fee-shifting statute or a contractual agreement, the "American rule" is that each party should bear its own attorney fees and costs. *See Riniker v. UnitedHealth Grp. Inc.*, No. 12-CV-2875 JNE/TNL, 2015 WL 1782566, at *8 (D. Minn. Apr. 20, 2015).

Here, the Arbitration Agreement provides for the shifting of attorney fees as follows: "The losing party shall bear any fees and expenses of the arbitrator, other tribunal fees and expenses, reasonable attorney's fees of both parties, any costs of producing witnesses and any other reasonable costs or expenses incurred by him or the prevailing party or such costs shall be allocated by the arbitrator." Orig. Pet., Attach. 3 at 13. On the basis of the pending motions, the Court cannot exclude the possibility that attorney fees and costs are warranted based on this contractual language, but neither can the Court grant Respondent's motion for fees and costs at this time. Accordingly, Respondent's request for attorney fees and costs is DENIED WITHOUT PREJUDICE. Respondent may file a separate motion for attorney fees and costs as provided by Federal Rule of Civil Procedure 54(d)(2).

C.   *Motion to Appoint a Receiver*

Petitioners have moved for the appointment of a receiver to administer the further winding down of BLG. *See* Receiver Mot. at 1-2. They contend that this relief is necessary to preclude further alleged misconduct by Respondent and his counsel in administering the funds and affairs of BLG, and in particular, the Escrow Account that Judge Levie ordered Respondent's counsel to administer. *See id.*; Renewed Pet. Reply at 16–17. The Court expresses no view on the validity of these contentions, as there are at least two independent, threshold reasons why the Court may not grant the relief that Petitioners seek.

First, the appointment of a receiver must be ancillary "to some primary relief which is sought and which equity may appropriately grant." *Kelleam v. Md. Cas. Co.*, 312 U.S. 377, 381 (1941). In other words, a receivership "is not an end in itself." *Id.*; *see also N.Y. Cmty. Bank v. Sherman Ave. Assocs., LLC*, 786 F. Supp. 2d 171, 175–76 (D.D.C. 2011); *Wells Fargo Bank, N.A. v. Star Texas Gasoline & Oil Distributors, Inc.*, No. 2:14-CV-453,

2015 WL 419638, at *3 (S.D. Tex. Jan. 29, 2015) (collecting cases). In this matter, the Court has denied the primary relief sought by Petitioners—vacatur of the Final Award—and has granted the primary relief sought by Respondent—confirmation of the Final Award. Consequently, at this juncture, the only relief that Petitioners can and do seek is the appointment of a receiver; but the Court cannot appoint a receiver "when it is sought as the primary form of relief." *Sherman*, 786 F. Supp. 2d at 176.

Beyond this first legal impediment lies the fact that the receivership issue has already been adjudicated in the underlying arbitration; and while Petitioners have requested that this Court appoint a receiver, they have not specifically challenged Judge Levie's and Arbitrator Margulies's denial of that request on any ground recognized by the FAA.[10] Granting Petitioners' request would be tantamount to vacating part of the Final Award that the Court now confirms in its entirety. Given that this matter has been constituted as a review of an arbitral award under the FAA, to the extent there are any disputes regarding the winding down of BLG that have arisen since the issuance of the Final Award, this Court is not the appropriate forum for the parties to air those grievances and seek ancillary relief

---

[10] In the March 2014 Interim Award, Judge Levie considered and denied Petitioners' request for a receiver to administer the dissolution of BLG. Rather, Judge Levie ordered that the Escrow Account be established and administered by Respondent's counsel, and indicated that the arbitrator would resolve any disputes that arose between the parties regarding the winding down of BLG. *See supra* at 5–6. Then, in the February 2016 Order, Arbitrator Margulies held that the "applications to appoint a receiver at this stage are not justified and are denied if still outstanding. Arbitrator Levie's Interim Award dated 3/31/14 denied such relief." Orig. Pet., Attach. 2 at 3. The Final Award, issued in May 2016, "specifically incorporate[ed] prior Orders and/or Awards . . . ." Renewed Pet., Attach. 2 at 3. Although the Court acknowledges Arbitrator Margulies's June 2016 ruling, which found that he lacked further authority to adjudicate disagreements between the parties regarding the dissolution of BLG, that does not change the fact that both he and Judge Levie denied Petitioners' request to appoint a receiver. Renewed Pet. Surreply Opp., Attach. 6.

in the form of a receivership. Accordingly, the Court DENIES Petitioners' motion for the appointment of a receiver.

D.   *Motion for Sanctions*

Respondent seeks sanctions pursuant to Federal Rule of Civil Procedure 11(b) against Petitioners' counsel, Dwight D. Murray, for a variety of misrepresentations that were allegedly made in Petitioners' pleadings to this Court, the most notable being Petitioners' frequent refrain that Arbitrator Margulies awarded sanctions against Petitioners and BLG. *See* Sanctions Mot. at 4–8. "The test for sanctions under Rule 11 is an objective one: that is, whether a reasonable inquiry would have revealed that there was no basis in law or fact for the asserted claim." *Hickey v. Scott*, 738 F. Supp. 2d 55, 72 (D.D.C. 2010) (internal quotation marks and alterations omitted). "If the Court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Cheeks of N. Am., Inc. v. Fort Myer Const. Corp.*, 807 F. Supp. 2d 77, 99 (D.D.C. 2011) (internal quotation marks omitted), *aff'd*, No. 11-7117, 2012 WL 3068449 (D.C. Cir. July 26, 2012). The imposition of sanctions is ultimately "left to the discretion of the district court judge," *id.*, and the Court must "take into consideration that Rule 11 sanctions are a harsh punishment . . . ." *Hickey*, 738 F. Supp. at 72; *see also Hourani v. Mirtchev*, 796 F.3d 1, 18 (D.C. Cir. 2015) ("once a district court finds a Rule 11 violation, it retains broad discretion in imposing sanctions"). After reviewing the record as a whole, the Court concludes that while some of Petitioners' contentions are potentially misleading, if viewed in context, they suggest positions that are not wholly frivolous or deceptive. The Court recognizes, however, that this is an exceedingly low bar by which to gauge attorney work product. Accordingly,

although the Court in an exercise of its discretion **DENIES** Respondent's motion for sanctions in this instance, the Court pauses to stress that, to the extent there are further proceedings in this matter, similar conduct shall not be tolerated.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner John Ray's [1] Petition to Vacate Arbitration Award; **GRANTS** Petitioners' [7] Motion to Amend Caption; **DENIES** Petitioners' [8] Motion For Expedited Appointment of Receiver and For Status Conference; **DENIES** Petitioners' [9] Renewed Petition to Vacate Arbitration Award and Motion to Appoint a Receiver; **GRANTS** Respondent's [14] Motion for Leave to File Surreply in Opposition to Renewed Petition to Vacate; **GRANTS** Respondent's [23] Cross-Motion to Confirm Arbitration Award, except to the extent it seeks attorney fees and costs for matters before this Court, which is **DENIED WITHOUT PREJUDICE**; and **DENIES** Respondent's [26] Motion for Rule 11 Sanctions Against Dwight Murray.

The Final Award is confirmed, and judgment shall be entered in the amount of $441,131.89, apportioned as $43,850.00 against Petitioner Ms. Ray, and $397,281.89 against Petitioners jointly and severally, plus interest as provided in 28 U.S.C. § 1961, from the date of the judgment until the judgment is paid.

An appropriate Order accompanies this Memorandum Opinion.

Dated: February 17, 2017

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge